**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| VINCENT A. CORTLESSA, SR. | ) | |
| | ) | Civil Action No. 14-1347 |
| Plaintiff, | ) | |
| | ) | District Judge Mark Hornack |
| v. | ) | |
| | ) | |
| MR. RICH FITZGERALD, Allegheny County | ) | Magistrate Judge Lenihan |
| Executive, MR. STEVEN A. ZAPPALA, | ) | |
| BOROUGH EXECUTIVE OF JEFFERSON | ) | |
| HILLS, CHIEF OF POLICE OF JEFFERSON | ) | |
| HILLS, OFFICER JEFF E. BEATTY, | ) | |
| MR. ELLIOT HOWSIE, | ) | |
| MS. SHANICKA L. KENNEDY, | ) | |
| MR. JESSEL COSTA, III, | ) | |
| MR. ORLANDO L. HARPER, | ) | |
| MS. LATOYA WARREN, | ) | |
| MS. MONICA LONG, | ) | ECF Nos. 73, 76, 79, 81, 83 |
| MR. WILLIAM EMERICK, | ) | |
| MS. KAITLIN LEE, | ) | |
| MR. GUY RESCHENTHALER, | ) | |
| JOHN DOES 1-10, MR. ADAM BISHOP, | ) | |
| OFFICER ZELLERS, OFFICER HAMAVICH, | ) | |
| OFFICER SEMIGE, MR. JIM DOLHI, | ) | |
| MR. TIM NICHOLS | ) | |
| Defendants. | ) | |

## REPORT AND RECOMMENDATION

### I. RECOMMENDATION

It is respectfully recommended that the Motions to Dismiss at ECF Nos. 73, 76, 79, 81, and 83 be granted.

### II. REPORT

#### A. Factual Averments

The following is the fourth iteration of Plaintiff's Complaint.

On May 24, 2014, at approximately 10:00 a.m., Jefferson Hills Borough Police Officer, Defendant Jeff E. Beatty ("Officer Beatty"), went to the scene of a theft at Moses Electric on Route 51 in Jefferson Hills Borough, Allegheny County. Officer Beatty watched a video of the theft and reported that the video depicted a silver minivan of unknown make and model (but believed to be a Ford) having identifiable unique markings/damages that entered the crime scene with an unknown white male between 40 to 55 years old, and with dark hair and a large framed body. The unknown male used a bolt cutting device to cut the lock off a construction trailer; entered the trailer; took equipment valued at $6,300; loaded the equipment into the minivan, and then left the scene. (Third Amended Complaint, ECF No. 67 at 6; Officer Beatty's Affidavit of Probable Cause, ECF No. 76-3 at 6[1].) Officer Beatty disseminated pictures of the minivan to local police departments. (ECF No. 76-3 at 2.) On July 30, 2014, Officer Beatty received information about a minivan that matched the minivan in the video. The male in the video matched Plaintiff Vincent A. Cortlessa, Sr.'s ("Plaintiff") description. The license plate on the minivan about which Officer Beatty received information was JKA5081 and belonged to Plaintiff. Officer Beatty also learned that at the time of the theft of the equipment from Moses Electric, Plaintiff was on parole for other theft charges. (ECF No. 67 at 7; ECF No. 76-3.) Plaintiff alleges that Officer Beatty also discovered that Plaintiff was involved in a civil complaint against a police officer from Downingtown, PA named Pamila Fentner. Plaintiff further avers that based on this information, Officer Beatty engaged in selective enforcement and retaliatory prosecution so that Plaintiff would remain in jail, and called the Pennsylvania State

---

[1] One of the defendants attached the Police Criminal Complaint and the Affidavit of Probable Cause to his Motion to Dismiss. (ECF No. 76-3.) The Court may consider these documents on a motion to dismiss without converting the motion to one for summary judgment because they are integral to Plaintiff's Third Amended Complaint and indisputably authentic. *See In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997); *PBGC v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993).

Parole Board "to make sure Plaintiff had a state detainer lodged against him so he could not make bond." (ECF No. 67 at 7-8.)

On July 31, 2014, Officer Beatty and Plaintiff's Parole Agent went to Plaintiff's home in Westmoreland County. Officer Beatty recognized both the minivan and Plaintiff from the video. Officer Beatty showed Plaintiff photos of the minivan at the crime scene, told Plaintiff that Officer Beatty knew about Plaintiff's past and knew that the man in the video was Plaintiff. Plaintiff told officer Beatty that Plaintiff had done nothing wrong and that Plaintiff could prove it. Officer Beatty and the Parole Agent asked Plaintiff to come to the Jefferson Hills Borough Police Station the following morning for an interview and to sign some papers. (ECF No. 67 at 7-9; ECF No. 76-3 at 2.)

Early the next day Plaintiff's boss called him into work, so Plaintiff called Officer Beatty and informed him that Plaintiff could not meet with Officer Beatty until after work. Therefore, on the evening of August 1, 2014, Plaintiff went to the Jefferson Hills Borough Police Station and met with Officer Beatty. Officer Beatty showed Plaintiff black and white pictures as well as the black and white video and stated that he believed Plaintiff committed the crime. Plaintiff avers that he told Officer Beatty that "he did nothing wrong and that he had proof that it was not him or his van" in the video. (ECF No.67 at 9.) Plaintiff alleges that at this time Officer Beatty became agitated and aggressive and told Plaintiff that he was "an arrogant bastard and a thief." Officer Beatty then presented Plaintiff with an arrest warrant. Plaintiff asked if he could call his wife and let her know that he was under arrest. Officer Beatty refused his request and indicated that he could call her from prison. Plaintiff further alleges that Officer Beatty indicated that "Pamila Fentner said to have a good time at [the] Allegheny County Jail." (ECF No. 67 at 8-9.)

On August 13, 2014, Magisterial District Justice Reschenthaler held a preliminary hearing. At the hearing, Officer Beatty testified that he had viewed the video which showed that Plaintiff went behind a trailer, used a bolt cutting device and removed a lock from the trailer. Officer Beatty admitted that he did not see Plaintiff cut the lock but saw Plaintiff make a motion that made Officer Beatty believe that Plaintiff was throwing the lock. Officer Beatty also admitted that he did not find the lock. Officer Beatty did not bring the video to the preliminary hearing. Despite Plaintiff's arguments that without the video there was no case against him, and that Plaintiff had a right to confront his accuser, the District Justice waived the case to trial. Plaintiff was represented by a public defender who objected to the absence of the video on the basis that Officer Beatty's testimony as to what was on the video violated the best evidence rule. Finally, Plaintiff avers that after the preliminary hearing, Magisterial District Justice Reschenthaler greeted the owner of Moses Electric, the victim of the theft, indicating that it was nice to see him again. (ECF No. 67 at 10.)

Next, Plaintiff avers that his attorneys, Defendants Elliot Howsie ("Howsie"), Shanicka L. Kennedy ("Kennedy"), Jessel Costa, III ("Costa"), and Adam Bishop ("Bishop") (collectively "Defendant Public Defenders"), failed miserably in their attempt to represent Plaintiff. Plaintiff avers that they refused to file motions requested by Plaintiff. (ECF No. 67 at 11, 16.)

As directed to the Allegheny County Prison Official Defendants, Orlando Harper ("Harper"), Latoya Warren ("Warren"), Monica Long ("Long"), William Emerick ("Emerick"), Kaitlin Lee ("Lee"), Officer Robert Zellars ("Zellars")[2], Officer Gregory Hamovitz ("Hamovitz")[3], and Officer Jason Semegy ("Semegy")[4] (collectively "Jail Defendants") and

---

[2] Plaintiff incorrectly names Officer Robert Zellars as "Zellers."
[3] Plaintiff incorrectly names Officer Gregory Hamovitz as "Hamavich."
[4] Plaintiff incorrectly names Officer Jason Semegy as "Semige."

Defendant Rich Fitzgerald ("Fitzgerald"), Plaintiff's averments relating to prison conditions concern the following:

1. There is only "one computerized law library machine for over 100 plus inmates."

2. The Jail Defendants refused to make copies.

3. The only writing tool sold at the prison is a 5 inch long felt tip pen and Plaintiff must buy pens from other inmates that bring them from state prison at inflated prices.

4. The Jail Defendants also demand that inmates wear an armband that displays the inmate's phone pin number, and that as a result, Plaintiff has had over $8.00 stolen from his phone account.

5. Officers on the pod are allowed to view personal information of inmates on the internet within readily accessible view of other officers and inmates.

6. The maximum security block where Plaintiff is housed is filled with weapons including approximately 22 free standing wooden tables that are not secured to the floor, and another 150 chairs that can be used to cause serious injury.

7. Cells are opened regardless of who shouts the command to do so, resulting in theft of commissary goods. Plaintiff has been robbed twice and has lost up to $75.00.

8. Plaintiff is forced to leave his cell in search of toilet tissue due to the fact that the prison will only supply two rolls per week. Plaintiff has been forced to hold his bowel movements for days and to use his clothing to clean himself after defecating.

9. Plaintiff was forced to be in the top bunk in certain cells. This top bunk is approximately 5 feet and 5 inches from the floor; there are no ladders. Plaintiff is forced to jump up and down, to and out of his bunk, causing knee and back pain

about which he has complained. Others have also complained about this issue but the problem has not been resolved.

10. As of December 24, 2014, there is no heat in the cells and the average temperature is 50 degrees.

11. Defendants knew that items in the commissary originally marked "not for individual resale" were removed from within cartons and placed for sale individually and that Plaintiff's consumption of these items, without being able to read the pertinent nutritional information, has contributed to his dangerous high blood pressure. Defendants know that the selling of these items individually is a violation of federal law. Plaintiff also avers that these Defendants know that these items are sold at substantially inflated prices.

(ECF No. 67 at 12-17.)

Plaintiff avers that the above facts demonstrate a violation of his First, Fourth, Sixth, Eighth, and Fourteenth Amendment rights to the United States Constitution, due to criminal profiling, selective and vindictive prosecution, retaliation, false arrest, false imprisonment, cruel and unusual punishment, slander, and defamation of character.[5]

Plaintiff is seeking $500.00 for each day he was denied his liberty; $150,000.00 for the loss of his job wherein he made $18.00 per hour; $2,500,000.00 for mental stress and anguish due to the fact that he will lose his mother while incarcerated, miss giving his daughter away at her wedding, missing out on seeing his grandbaby grow up and being deprived of time with his wife whom he almost lost to cancer. (ECF No. 67 at 18.)

---

[5] Plaintiff also appears to attempt to make out a claim for violation of his First Amendment right to access to the courts.

B.  Legal Standards

Recently, the United States Court of Appeals for the Third Circuit summarized the

standard to be applied in deciding motions to dismiss filed pursuant to Rule 12(b)(6):

> Under the "notice pleading" standard embodied in Rule 8 of the
> Federal Rules of Civil Procedure, a plaintiff must come forward
> with "a short and plain statement of the claim showing that the
> pleader is entitled to relief." As explicated in *Ashcroft v. Iqbal*, 556
> U.S. 662, 678 (2009), a claimant must state a "plausible" claim for
> relief, and "[a] claim has facial plausibility when the pleaded
> factual content allows the court to draw the reasonable inference
> that the defendant is liable for the misconduct alleged." Although
> "[f]actual allegations must be enough to raise a right to relief
> above the speculative level," *Bell Atlantic Corp. v. Twombly*, 550
> U.S. 544, 555 (2007), a plaintiff "need only put forth allegations
> that raise a reasonable expectation that discovery will reveal
> evidence of the necessary element." *Fowler*, 578 F.3d at 213
> (quotation marks and citations omitted); *see also Covington v. Int'l
> Ass'n of Approved Basketball Officials*, 710 F.3d 114, 117–18 (3d
> Cir. 2013).

*Thompson v. Real Estate Mortg. Network*, 748 F.3d 142, 147 (3d Cir. 2014).

In addition to the complaint, courts may consider matters of public record and other

matters of which a court may take judicial notice, court orders, and exhibits attached to the

complaint when adjudicating a motion to dismiss under Rule 12(b)(6).  *Oshiver v. Levin,*

*Fishbein, Sedran & Berman,* 38 F.3d 1380, 1384 n.2 (3d Cir. 1994) (citing 5A Wright and

Miller, *Federal Practice and Procedure: Civil 2d,* § 1357; *Chester County Intermediate Unit v.*

*Pennsylvania Blue Shield,* 896 F.2d 808, 812 (3d Cir. 1990)).  A court may also consider

indisputably authentic documents.  *Spruill v. Gillis,* 372 F.3d 218, 223 (3d Cir. 2004); *Pension*

*Ben. Guar. Corp. v. White Consol. Indus., Inc.,* 998 F.2d 1192, 1196 (3d Cir. 1993); *Golden v.*

*Cook,* 293 F. Supp.2d 546, 551 (W.D. Pa. 2003) ("[C]ourts are permitted to consider matters of

which they may take judicial notice, including records and reports of administrative bodies, and

publically available records and transcripts from judicial proceedings 'in related or underlying cases which have a direct relation to the matters at issue.'") (citations omitted).

Finally, the Court must liberally construe the factual allegations of the Complaint because pleadings filed by pro se plaintiffs are held to a less stringent standard than formal pleadings drafted by lawyers. *Erickson v. Pardus,* 551 U.S. 89, 94 (2007). Therefore, if the Court "can reasonably read [the] pleadings to state a valid claim on which [Plaintiff] could prevail, it should do so despite failure to cite proper legal authority, confusion of legal theories, poor syntax and sentence construction, or [Plaintiff's] unfamiliarity with pleading requirements." *Wilberger v. Ziegler*, No. 08-54, 2009 WL 734728 at *3 (W.D. Pa. March 19, 2009) (citing *Boag v. MacDougall,* 454 U.S. 364 (1982) (*per curiam*)).


C. Analysis

Section 1983

Section 1983 of the Civil Rights Act provides as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or any other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983. To state a claim for relief under this provision, the Plaintiff must demonstrate that the conduct in the complaint was committed by a person or entity acting under color of state law, and that such conduct deprived the Plaintiff of rights, privileges or immunities secured by the Constitution or the laws of the United States. *Piecknick v. Commonwealth of Pennsylvania*, 36 F.3d 1250, 1255-56 (3d Cir. 1994). Section 1983 does not create rights; it simply provides a

remedy for violations of those rights created by the United States Constitution or federal law. *Kneipp v. Tedder*, 95 F.3d 1199, 1204 (3d Cir. 1996).

1. Motion to Dismiss filed by Defendant Public Defenders Howsie, Kennedy, Costa, and Bishop (ECF No. 73.)

Public Defender Defendants Howsie, Kennedy, Costa, and Bishop argue that as county public defenders, they enjoy immunity from liability under § 1983. Plaintiff responds that as to the Public Defender Defendants, the relevant averments speak for themselves. (ECF No. 70 at 1.)[6]

The United States Supreme Court has held that court appointed counsel, including public defenders, do not act "under color of state law" when performing their traditional lawyer functions as counsel to a defendant, and therefore, are not amenable to suit pursuant to § 1983. *Polk County v. Dodson,* 454 U.S. 312, 318 (1981) (although an employee of the state when serving as counsel to an indigent defendant, public defender does not act under color of state law; public defender owes loyalty to the criminal defendant, not the state). Therefore, Plaintiff is not entitled to judgment against the Public Defender Defendants as a matter of law. Hence, the Motion to Dismiss filed by Defendants Howsie, Kennedy, Costa, and Bishop at ECF No. 73 should be granted. Any further attempt to amend the Complaint will be futile.[7]

---

[6] In light of Plaintiff's pro se status, the Court considers all of Plaintiff's responses filed to the numerous motions to dismiss that were eventually rendered moot as a result of the various amended complaints. These responses are found at ECF Nos. 40, 47, 70, 71, 72, and 86.

[7] The United States Court of Appeals for the Third Circuit in *Phillips v. County of Allegheny* has ruled that if a district court is dismissing a claim pursuant to Fed. R. Civ. P. 12(b) (6) in a civil rights case, it must sua sponte "permit a curative amendment unless such an amendment would be inequitable or futile." 515 F.3d 224, 245 (3d Cir. 2008).

2.  Motion to Dismiss filed by Defendant Officer Beatty.  (ECF No. 79.)

Defendant Officer Beatty argues that Plaintiff's arrest was supported by probable cause and therefore, Plaintiff's claims for false arrest, false imprisonment, and malicious prosecution must be dismissed as a matter of law.  As to Plaintiff's First Amendment retaliation claim,[8] Officer Beatty argues there was probable cause to support Plaintiff's arrest, and Plaintiff does not argue otherwise.  According to Officer Beatty, Plaintiff only asserts that he was arrested in retaliation for his civil lawsuit against the Downingtown, Pennsylvania police officer, Pamela Fentner.  (ECF No. 80.)

The Fourth Amendment's prohibition against unreasonable seizures protects individuals from arrest without probable cause.  *Orsatti v. New Jersey State Police*, 71 F.3d 480, 482 (3d Cir. 1995) (citing *Papachristou v. City of Jacksonville*, 405 U.S. 156, 169 (1972)).  "Probable cause exists whenever reasonably trustworthy information or circumstances within a police officer's knowledge are sufficient to warrant a person of reasonable caution to conclude that an offense has been committed by the person being arrested."  *United States v. Myers*, 308 F.3d 251, 255 (3d Cir. 2002) (citing *Beck v. Ohio*, 379 U.S. 89, 91 (1964)).  The law of the state where the arrest occurred controls whether the arrest is valid.  *Myers*, 308 F.3d at 255 (citing *Ker v. California*, 374 U.S. 23, 37 (1963)).  In determining whether probable cause exists to support an arrest, the analysis must be based upon the totality of circumstances including "the objective facts available to the officers at the time of the arrest."  *Sharrar v. Felsing*, 128 F.3d 810, 818 (3d Cir. 1997) (citing *Illinois v. Gates*, 462 U.S. 213, 230-31 (1983)).  Subjective intentions of police

---

[8] Although Plaintiff uses the term "selective enforcement" to describe one of his claims, the facts as alleged describe a claim for First Amendment retaliation in that Plaintiff asserts that Officer Beatty arrested him because Plaintiff brought a civil action against a fellow police officer.  Plaintiff does not allege that he was treated differently than another for reasons forbidden by the Constitution.  *See Muhammad v. Abington Twp. Police Dep't*, 37 F. Supp.3d 746, 756 (E.D. Pa. 2014).

officers are irrelevant to a Fourth Amendment probable cause analysis. *Whren v. United States*, 517 U.S. 806, 813 (1996).

Similarly, to state a claim for false imprisonment, a plaintiff must establish that he was detained, and that the detention was unlawful. *James v. City of Wilkes-Barre*, 700 F.3d 675, 682-83 (3d Cir. 2012). That is, "where the police lack probable cause to make an arrest, the arrestee has a claim under § 1983 for false imprisonment based on a detention pursuant to that arrest." *Groman v. Twp. of Manalapan*, 47 F.3d 628, 636 (3d Cir. 1995).

Here, Plaintiff was convicted on March 12, 2015 of Theft by Unlawful Taking pursuant to 18 Pa. C.S.A. § 3921(b), and Criminal Mischief pursuant to 18 Pa. C.S.A. § 3304(a)(1). (Court of Common Pleas of Allegheny County Criminal Docket, *Commonwealth of Pennsylvania v. Cortlessa,* Docket No. CP-02-CR-0010837-2014.) Conviction establishes as a matter of law that the arrest was supported by probable cause. *Shelley v. Wilson*, 339 F. App'x 136, 139 (3d Cir. 2009) (citing *McClam v. Barry*, 697 F.2d 366, 370 (D.C. Cir. 1983), *overruled on other grounds, Brown v. U.S.*, 742 F.2d 1498 (D.C. Cir. 1984) ("stating that as to common law and constitutional law false arrest claims, 'subsequent conviction establishes as a matter of law that the arrest was justified.'")). And "when an arrest is made on more than one charge, '[p]robable cause need only exist as to any offense that could be charged under the circumstances.'" *Shelley*, 339 F. App'x at 139 n.4 (quoting *Barna v. City of Perth Amboy*, 42 F.3d 809, 819 (3d Cir. 1994)). Hence, Plaintiff cannot succeed on his claims of false arrest and false imprisonment as a matter of law.[9]

---

[9] Plaintiff's false arrest and false imprisonment claims are also barred by the *Heck* doctrine because a finding for Plaintiff on his § 1983 false arrest and false imprisonment claims would undermine the state court convictions for Theft and Criminal Mischief which establish as a matter of law that the arrest was supported by probable cause. *See Heck v. Humphrey*, 512 U.S. 477 (1994), *discussed in, Turosik v. Hougue*, Civil Case No. 08-1248, 2011 WL 1044648, at *8-9 (W.D. Pa. March 18, 2011).

In order to establish a Fourth Amendment malicious prosecution claim pursuant to § 1983, a plaintiff must show the following: 1) the defendant initiated a criminal proceeding; 2) the criminal proceeding ended in the plaintiff's favor; 3) the proceeding was initiated without probable cause; 4) the defendant acted maliciously or for a purpose other than bringing the plaintiff to justice; and 5) the plaintiff suffered a deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding. *McKenna v. City of Philadelphia*, 582 F.3d 447, 461 (3d Cir. 2009) (citing *Estate of Smith v. Marasco*, 318 F.3d 497, 521 (3d Cir. 2003)).

As noted above, Plaintiff's convictions establish that the proceedings against him were initiated with probable cause. *Shelley*, 339 F. App'x at 139. Hence, Plaintiff cannot establish the third element of a prima facie claim for malicious prosecution as a matter of law.[10]

Finally, the doctrine of *Heck v. Humphrey*, 512 U.S. 477 (1994), will bar Plaintiff's First Amendment retaliation claim. In *Heck*, the United States Supreme Court held that a § 1983 claim could not be maintained "on the basis of events leading to a conviction which has not been reversed or impaired by other official proceedings" when a favorable judgment in a civil case for the § 1983 plaintiff would imply the invalidity of plaintiff's conviction. *Nelson v. Jashurek*, 109 F.3d 142, 144 (3d Cir. 1997) (citing *Heck*, 512 U.S. at 485-87).

In order to prove a First Amendment retaliation claim, Plaintiff must demonstrate that he engaged in protected activity; that the government responded with retaliation; and that the protected activity was the cause of the retaliation. *McDonald v. Foltz*, No. 2:05cv901, 2007 WL

---

[10] Although Plaintiff argues that he has evidence that Officer Beatty falsified his initial police report/affidavit to secure the arrest warrant, the facts of the Third Amended Complaint as alleged by Plaintiff demonstrate that probable cause existed for the arrest. That is, after four iterations of Plaintiff's Complaint, Plaintiff's bald assertion in his responsive brief that Officer Beatty falsified his initial police report/affidavit (ECF No. 72 at 1), without more, fails to raise his right to relief above the speculative level. *See Bell Atlantic Corp.*, 550 U.S. at 555.

760509, at \*13 (W.D. Pa. Mar. 8, 2007) (citing *Estate of Smith v. Marasco*, 318 F.3d 497, 512 (3d Cir. 2003)).

In his attempt to show that Officer Beatty's arrest was retaliatory, Plaintiff would be claiming that the criminal charges against him had no merit, and were only meant to punish Plaintiff for filing a civil action against a fellow police officer, Pamela Fentner. Hence, Plaintiff's argument in support of his retaliation claim would be that probable cause did not exist to arrest and prosecute. In order to bring a retaliation claim, Plaintiff must allege and then prove the absence of probable cause. *See Hartman v. Moore*, 547 U.S. 250, 264-65 (2006). Plaintiff cannot establish an absence of probable cause in light of his convictions for theft and criminal mischief. Therefore, in proving his retaliation claim, he would be arguing his innocence of the criminal charge that did not terminate in his favor. This sort of attack is impermissible under *Heck. See Nelson*, 109 F.3d at 144.[11]

Hence, the Motion to Dismiss filed by Defendant Officer Beatty (ECF No. 79) should be granted.[12] Any attempt to amend the Third Amended Complaint would be futile.

3. Motion to Dismiss filed by Defendant Borough Executive of Jefferson Hills (ECF No. 81), Motion to Dismiss filed by Defendant Chief of Police of Jefferson Hills (ECF No. 83), Motion to Dismiss filed by Defendant Fitzgerald (ECF No. 73), and Motion to Dismiss, or in the alternative, Motion to Stay, filed by Defendant Stephen A. Zappala (ECF No. 76).

---

[11] Even if Plaintiff is attempting to make out a selective enforcement claim pursuant to the Equal Protection Clause of the Fourteenth Amendment, such claim would be barred by *Heck* for the same reasons.

[12] Although the Plaintiff includes the terms "slander and defamation of character" in his listing of claims that he asserts generally against all named Defendants, Plaintiff has averred no facts that any of the Defendants made a communication that tended "to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him." *Thomas Merton Center v. Rockwell Int'l Corp.*, 442 A.2d 213, 215 (Pa. 1981) (quoting *Birl v. Phila. Elec. Co.*, 167 A.2d 472, 475 (Pa. 1960)). Further, there is no federal constitutional right to reputation, *Siegert v. Gilley*, 500 U.S. 226 (1991), and violations of state law, including defamation, are insufficient to state a claim under § 1983. *See Rose v. Bartle*, 871 F.2d 331, 347 (3d Cir. 1989).

Defendants Borough Executive of Jefferson Hills, Chief of Police of Jefferson Hills, Allegheny County Executive Fitzgerald, and District Attorney Zappala advance similar arguments in their Motions to Dismiss. First, as to the personal capacity claims, Defendants argue that Plaintiff has failed to aver how they personally participated in Plaintiff's alleged constitutional injury. Second, as to the official capacity claims, Defendants argue that Plaintiff has failed to allege that their respective entities (Allegheny County and the Borough of Jefferson Hills) had a policy, custom or practice that resulted in Plaintiff's alleged constitutionally cognizable injury. (ECF Nos. 75, 77, 82, & 84.) Plaintiff responds that these Defendants enabled Defendant Officer Beatty to violate his constitutional rights. (ECF No. 40 at 1, ECF No. 72 at 1.)

Here, Plaintiff alleges only that the Defendants ignored the violation of his constitutional rights by Officer Beatty "even after being informed by [P]laintiff of said violations via a notice of intent sent by [P]laintiff to all parties named in the above caption via U.S. mail . . . ."[13] [14] Therefore, according to Plaintiff, these Defendants should be held liable for the actions of their employees. (ECF No. 67 at 5.)

Plaintiff has alleged no facts as to the personal involvement of the unidentified Borough Executive of Jefferson Hills, the unidentified Chief of Police of Jefferson Hills, Defendant Fitzgerald or Defendant Zappala. In order to make out a claim against Defendants in their individual capacities pursuant to § 1983, a plaintiff must allege facts demonstrating that defendants had personal involvement in the alleged wrongs; § 1983 liability may not be

---

[13] Also, Plaintiff appears to allege that the Defendants failed to withdraw all criminal charges against him stemming from the alleged constitutional violations even though Plaintiff gave these Defendants 30 days to do so. (ECF No. 67 at 5.)

[14] As to Defendant Fitzgerald only, Plaintiff also references the heat in the jail, the removal of items from cartons clearly marked "not for individual resale," and the sale of these items at inflated prices. (ECF No. 67 at 16, 17.) Plaintiff does not allege that Defendant Fitzgerald participated in the alleged constitutional violations.

predicated upon the operation of respondeat superior. *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988). Plaintiff does not allege any actions taken personally by these Defendants. Instead, Plaintiff alleges that Defendants had the power to reverse any violations by other individual Defendants. Plaintiff may not rely on the doctrine of respondeat superior to impose § 1983 liability on Defendants in their individual capacities.

Moreover, liability of these supervisors may not be premised on the allegations that they failed to act or should have done more. *Sample v. Diecks*, 885 F.2d 1099 (3d Cir. 1989). Plaintiff must identify specifically what these Defendants failed to do that evidences their deliberate indifference. "Only in the context of a specific defalcation on the part of the supervisory official can the court assess whether the official's conduct evidenced deliberate indifference and whether there is a close causal relationship between the 'identified deficiency' and the 'ultimate injury.'" *Id.* at 1118. Clearly, Plaintiff's allegations fall woefully short of stating plausible claims for supervisory liability against these Defendants. Therefore, it is respectfully recommended that the Motions to Dismiss all claims filed by the Borough Executive of Jefferson Hills, Chief of Police of Jefferson Hills, Allegheny County Executive Fitzgerald, and District Attorney Zappala [15] in their individual capacities at ECF Nos. 73, 76, 81 & 83 be granted. Any further attempt to amend the Third Amended Complaint would be futile.

As to the official capacity claims, these Defendants argue that Plaintiff has averred no facts to suggest that a representative or agent of Jefferson Hills or Allegheny County violated Plaintiff's constitutional rights pursuant to a policy, custom or practice of the Borough or County. (ECF Nos. 75, 77, 82, 84.)

---

[15] Of course, District Attorney Zappala is also protected by absolute prosecutorial immunity for all actions taken that are "intimately associated with the judicial phase of the criminal process." *See Imber v. Pachtman*, 424 U.S. 409, 424, 430 (1976).

An official capacity suit is really an action against the government itself. *See Kentucky v. Graham*, 473 U.S. 159, 166 (1985). In *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658 (1978), the United States Supreme Court held that municipalities and other local governmental units are "persons" subject to liability under 42 U.S.C. § 1983. In so ruling, however, the Court declared that municipal liability may not be premised on the mere fact that the governmental unit employed the offending official, that is, through application of the doctrine of respondeat superior. Instead, the Court concluded that a governmental unit may be liable under § 1983 only when its "policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." *Monell*, 436 U.S. at 694. The "official policy" requirement distinguishes acts of the municipality from acts of employees of the municipality, thereby limiting liability to action for which the municipality is actually responsible. *Id.*

In finding municipal liability pursuant to §1983, the plaintiff must identify the policy, custom or practice of the municipal defendant that results in the constitutional violation. *Id.* at 690-91. A municipal policy is made when a decision-maker issues an official proclamation or decision. *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481 (1986), *quoted in*, *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480 (3d Cir. 1990). A custom or practice, however, may consist of a course of conduct so permanent and widespread that it has the force of law. *Andrews*, 895 F.2d at 1480. To establish municipal liability based upon a custom or practice, the plaintiff must demonstrate that the decision-maker had notice that a constitutional violation could occur and that the decision-maker acted with deliberate indifference to this risk. *Berg v. County of Allegheny*, 219 F.3d 261, 276 (3d Cir. 2000). Finally, Plaintiff must show a causal connection between the custom or policy and the violation of the constitutional right. *Bielevicz v. Dubinon*,

915 F.2d 845, 850-51 (3d Cir. 1990). That is, a plaintiff must demonstrate an "affirmative link" or "plausible nexus" between the custom or practice and the alleged constitutional deprivation. *Bielevicz*, 915 F.2d at 850-51.

Again, Plaintiff's averments fall woefully short of stating a plausible claim for relief against Defendants Borough Executive of Jefferson Hills, Chief of Police of Jefferson Hills, Zappala and Fitzgerald in their official capacities pursuant to *Monell.* Plaintiff alleges no facts to suggest that the Borough or County had a policy, custom or practice that resulted in the alleged constitutional violation. Nor has he alleged any facts to suggest that the Borough or County had notice that a constitutional violation could occur and was deliberately indifferent to the risk. Therefore, it is respectfully recommended that the Motions to Dismiss filed by the Borough Executive of Jefferson Hills, Chief of Police of Jefferson Hills, Allegheny County Executive Fitzgerald, and District Attorney Zappala in their official capacities at ECF Nos. 73, 76, 81 & 83 be granted. Any further attempt to amend the Third Amended Complaint would be futile.

4. Motion to Dismiss filed by Jail Defendants Harper, Warren, Long, Emerick, Lee, Zellars, Hamovitz, and Semegy (ECF No. 73.)

a. Personal Capacity Claims

The Jail Defendants first argue that they are not liable to the Plaintiff in their individual capacities in that Plaintiff does not aver how each of them participated in, or had knowledge of, the alleged constitutional violations. (ECF No. 75 at 8.) Plaintiff responds that Defendants Harper, Warren, Long, Emerick, and Lee failed to make more than one access point to the law library available for over 100 persons using it, failed to assist the computer illiterate, refused to make copies, or have an affidavit notarized. (ECF No. 47 at 2-3, ECF No. 70 at 1.)

The averments of the Third Amended Complaint relating to these Defendants are found in Paragraphs 8 through 12, and relating to only Harper, Warren, Long, and Emerick at Paragraph 15. Paragraph 8 describes Plaintiff's complaints concerning the law library, absence of sufficient writing instruments, and the required armbands that display an inmate's phone pin number. Plaintiff does not describe the personal involvement of each of the Defendants. Plaintiff only sets forth his complaints and attributes those complaints generally to all of the Jail Defendants. In order to make out a claim against Defendants in their individual capacities pursuant to § 1983, a plaintiff must allege facts demonstrating that defendants had personal involvement in the alleged wrongs. *Rode*, 845 F.2d at 1207. Hence, Plaintiff has failed to meet the requirements of *Twombly* as they relate to the allegations of Paragraph 8, and the Defendants implicated therein, in their personal capacities.

In addition, Plaintiff appears to be raising his First Amendment protection of Access to the Courts. A prisoner raising an access to the courts claim must show that the denial of access caused him to suffer an actual injury. *See Lewis v. Casey*, 518 U.S. 343, 351 (1996). The United States Supreme Court has indicated that an actual injury occurs when a prisoner is prevented from pursuing or has lost the opportunity to pursue a "nonfrivolous" and "arguable" claim. *See Christopher v. Harbury*, 536 U.S. 403, 415 (2002). The lost claims must be alleged in the prisoner's complaint. *Id.*

Here, Plaintiff has not averred that he has lost any claims as a result of the inadequacies of the law library computer, the failure to make copies, and the inadequate writing instruments. Instead, Plaintiff alleged that he was represented by attorneys from the Public Defender's Office in the underlying criminal proceedings who "failed miserably" in their representation of Plaintiff. Consequently, he may not bring a First Amendment Access to the Courts claim as a matter of

law as to those proceedings.  *See Annis v. Fayette Cnty. Jail*, Civil Action No. 07-1628, 2008 WL 763735, at *1 (W.D. Pa. Mar. 20, 2008) (where the state offers counsel to a criminal defendant, his right of access to the courts is satisfied as a matter of law).  As to his civil action presently before the Court, Plaintiff has not averred that he has been prevented from pursuing a "nonfrivolous" and "arguable" claim.  In fact, the voluminous filings in the above captioned case demonstrate that Plaintiff has been able to rigorously prosecute his case.  Hence, Plaintiff's First Amendment Access to the Courts claim should be dismissed.

Paragraph 9 describes the privacy issue of an internet accessible computer and the "beaming" onto the pod.  Plaintiff describes the beating of other inmates as a result of this lack of computer privacy.  Plaintiff appears to identify Defendants Zellars, Hamovitz, and Semegy as being involved with these issues.  Plaintiff, however, does not describe a constitutionally cognizable injury as it relates to Plaintiff, but only as to other inmates and the injuries he has witnessed as to them.  Plaintiff does not have standing to bring these claims on their behalf.  *See Nasir v. Morgan*, 350 F.3d 366, 376 (3d Cir. 2003) (To successfully assert third party standing, plaintiff must suffer an injury, have a close relationship with the third party, and the third party must face some obstacle that prevents it from pursuing its own claims.)  Hence, the claims in Paragraph 9 should be dismissed for lack of standing.

In Paragraph 10, which relates only to Defendants Zellars, Hamovitz, and Semegy, Plaintiff alleges safety issues concerning 22 free standing wood tables that are not secured to the floor, and 150 chairs that can be used to cause injury or death.  Plaintiff does not allege that he has been injured,[16] nor does he allege how Defendants Zellars, Hamovitz, and Semegy are personally involved with this issue.  Similarly, Plaintiff continues in Paragraph 10 that cell doors

---

[16] Plaintiff cannot make out a claim for hypothetical injuries involving the unsecured tables and chairs.  *See Goode v. Gioria*, 590 F. App'x 120, 122 (3d Cir. 2014).

are opened regardless of who shouts the command and that his cell has been robbed twice for a total loss of $75.00. Plaintiff also avers that he has to go in search of toilet tissue because he is only given two rolls per week. Again, Plaintiff does not allege the personal involvement of Zellars, Hamovitz, or Semegy. Therefore, Paragraph 10 should be dismissed against these Defendants in their personal capacities.

Paragraph 11 concerns Plaintiff's back pain from being forced to climb in and out of his bunk without a ladder. Again, Plaintiff does not allege how Defendants are involved with this alleged constitutional violation. Paragraph 12 concerns all the named Jail Defendants and the lack of heat in the cells. Again Plaintiff lacks standing to bring a claim on behalf of other inmates, and has failed to allege how the Jail Defendants were personally involved in this alleged constitutional violation.

Finally, as to Jail Defendants Harper, Warren, Long, and Emerick, Plaintiff alleges that Defendants Dolhi and Nichols acted through these particular Jail Defendants in removing commissary items from their cartons and placing them for sale where originally marked "not for individual resale," and did so at substantially inflated prices. Again, Plaintiff has failed to aver how Jail Defendants Harper, Warren, Long, and Emerick were personally involved in this alleged constitutional violation.

Moreover, Plaintiff's attempt to state an Eighth Amendment cruel and unusual punishment claim based on conditions of confinement must fail. The Eighth Amendment does not mandate that prisons be free of discomfort. *Hudson v. McMillian*, 503 U.S. 1, 9 (1992). Instead, only "extreme deprivations" are sufficient to present a claim for unconstitutional conditions of confinement. *Id*. at 8-9. A prison official must be deliberately indifferent to inmate health or safety resulting in the denial of "the minimal civilized measure of life's

necessities." *See Farmer v. Brennan*, 511 U.S. 825, 832 (1994). Therefore, an Eighth Amendment violation will only occur where a prison official knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it. *Farmer*, 511 U.S. at 847.

Plaintiff's allegations fall far short of this standard. Plaintiff's complaint does not rise to the level of denying him "the minimal civilized measure of life's necessities." Nor has he alleged how each of the Jail Defendants was deliberately indifferent to a known and substantial risk of serious harm to Plaintiff, and how each disregarded that known and substantial risk by failing to abate it.

Consequently, the claims against the Jail Defendants in their personal capacities should be dismissed. Any further attempt to amend the Third Amended Complaint would be futile.

### b. Official Capacity Claims

As noted above, an official capacity suit is really an action against the government itself. *See Kentucky v. Graham*, 473 U.S. at 166. Hence, the official capacity claims against the Jail Defendants are really claims against Allegheny County.

Allegheny County will be liable under § 1983 only if one if its employees violated Plaintiff's civil rights as a result of a municipal policy, practice or custom. *Monell*, 436 U.S. 658. Allegheny County cannot be liable under *Monell* unless one of its employees is primarily liable under § 1983. Because the Court recommends that all claims against the Jail Defendants in their individual capacities be dismissed with prejudice, Plaintiff cannot maintain his claim against Allegheny County. *Williams v. Borough of West Chester, Pa.*, 891 F.2d 458, 467 (3d Cir. 1989). Consequently, Defendants' Motion to Dismiss Plaintiff's claims against the Jail Defendants in their official capacities should be granted.

### III. CONCLUSION

For the reasons discussed above, it is respectfully recommended that the Motions to

Dismiss at ECF Nos. 73, 76, 79, 81, and 83 be granted.

In accordance with the Magistrate Judge's Act, 28 U.S.C. § 636(b)(1)(B) and (C), and

Local Rule of Court 72.D.2., the parties are allowed fourteen (14) days from the date of service

to file objections to this report and recommendation.  Any party opposing the objections shall

have fourteen (14) days from the date of service of objections to respond thereto.  Failure to file

timely objections will constitute a waiver of any appellate rights.

Dated: October 30, 2015                                    BY THE COURT:

_____
LISA PUPO LENIHAN
United States Magistrate Judge

cc:     Vincent A. Cortlessa, Sr.
        FJ-7676
        SCI-Pittsburgh
        Allegheny County Jail
        P.O. Box 99991
        Pittsburgh, PA  15233

        All Counsel of Record
        Via Electronic Mail